# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| BRIAN A. MCCLELLAN, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:18-CV-408-JEM |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of the | ) | |
| Social Security Administration, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Brian McClellan on October 29, 2018, and Plaintiff's Opening Brief [DE 21], filed March 18, 2019. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On April 26, 2019, the Commissioner filed a response, and Plaintiff did not file a reply. For the foregoing reasons, the Court affirms the Commissioner's decision.

## I. Background

On August 3, 2015, Plaintiff filed an application for benefits alleging that he became disabled on January 3, 2012. Plaintiff's application was denied initially and upon consideration. On October 12, 2017, Administrative Law Judge ("ALJ") Trina Moore held a hearing at which Plaintiff, along with an attorney and a vocational expert ("VE"), testified. At the hearing, Plaintiff amended his alleged onset date to July 1, 2013. On November 27, 2017, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2016.

2. The claimant did not engage in substantial gainful activity during the

1

period from his amended alleged onset date of July 1, 2013 through his date last insured ("DLI") of December 31, 2016.

3.    The claimant has the following severe impairments: diabetes mellitus with neuropathy, hypertension, and obesity.

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant could occasionally climb ladders, ropes or scaffolds but could frequently climb ramps and stairs; frequently balance; and occasionally stoop, kneel, crouch, and crawl. The claimant could frequently handle, finger, and feel bilaterally.

6.    Through the date last insured, the claimant was capable of performing past relevant work as a truck driver.

7.    The claimant was not been under a disability, as defined in the Social Security Act, through December 31, 2016, the date last insured.

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 19]. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## II.    Standard of Review

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will

reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010) (*O'Connor-Spinner I*); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his or her analysis of the evidence to allow the reviewing court to trace the path of her reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant]

meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## III.   Analysis

Plaintiff argues that the ALJ erred in weighing medical opinions, failed to consider evidence post-dating Plaintiff's date last insured; and erred in evaluating Plaintiff's subjective symptoms. The Commissioner argues that the decision is supported by substantial evidence.

Plaintiff argues that the ALJ erred in failing to give significant weight to any of the medical opinions. The ALJ considered the opinions of two state agency examiners and granted them "little weight," finding them inconsistent with the evidence of Plaintiff's numbness in his hands, dizziness, balance issues, and postural limitations, among others. AR 28. There were no other medical opinions in the record. The Seventh Circuit Court of Appeals has made clear that "ALJs are not qualified to evaluate medical records themselves, but must rely on expert opinions." *Moreno v. Berryhill*, 882 F.3d 722, 729 (7th Cir. 2018) (citing *Meuser v. Colvin*, 838 F.3d 905, 911 (7th Cir. 2016); *Myles v. Astrue*, 582 F.3d 672, 677-78 (7th Cir. 2009) (warning that an ALJ may not "play[ ] doctor and reach[ ] his own independent medical conclusion"). Instead, the ALJ made a series of specific findings about Plaintiff's limitations – such as his ability to "occasionally" climb ropes – based on her own conclusions about what a 330-pound man with numbness in his hands, dizziness, balance issues and postural limitations should be able to climb. This alone requires remand. *See Briscoe*, 425 F.3d at 352 (remanding where "the ALJ did not explain how he arrived at his conclusions; this omission in itself is sufficient to warrant reversal of the ALJ's decision"); *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996) ("Being unable to discern how—apart from substituting his own judgment for that of the medical

witnesses—the ALJ reached his determination regarding the degree of Rohan's impairments, we must reverse and remand for further proceedings.").

Next, Plaintiff argues that the ALJ wrongly failed to consider evidence of Plaintiff's ailments after December 31, 2016, his date last insured. The ALJ stated that "[f]or purposes of this decision, evidence prior to December 31, 2016 is considered probative." While not necessarily "probative," later evidence can be relevant. *See Parker v. Astrue*, 597 F.3d 920, 925 (7th Cir. 2010) (the ALJ must "consider all relevant evidence, including the evidence regarding the plaintiff's condition at present"); *see also Wilder v. Apfel*, 153 F.3d 799, 802 (7th Cir. 1998) (finding that medical opinions submitted after the date last insured were relevant).

The ALJ's treatment of this evidence was careless at best. A sleep study undertaken in September 2017 revealed that Plaintiff had "severe" obstructive sleep disordered breathing, "very poor" sleep efficiency, and did not achieve REM sleep. AR 727. The ALJ found Plaintiff's sleep issue to be a non-medically determinable impairment "given the lack of diagnosis or any complaint" prior to December 31, 2016. That justification was flawed, because Plaintiff did complain before that date. *See* AR 655 ("fatigue and tiredness" recorded December 2012); AR 702 (in October 2015, Plaintiff "reports initial insomnia. 'Most nights I can't fall asleep.' He estimates that he sleeps about four to six hours a night."). In May 2017, Plaintiff was diagnosed with osteoarthritis after complaining of left knee and shoulder pain. Again, the ALJ found the osteoarthritis to be a non-medically determinable impairment, and noted that the diagnosis only came after December 31, 2016. But in October 2015, Plaintiff had complained of severe swelling and stiffness in his knees and shoulders, and claimed that he was "diagnosed with arthritis in 2000." AR 700; *see also* AR 714 (complaint of shoulder pain in October 2015), 677 (musculoskeletal "tenderness" at May 2015 physical exam).

The ALJ's apparent conclusion was that Plaintiff did not have either condition on December 31, 2016, but somehow developed osteoarthritis within five months and a "severe" sleep disorder within nine months. There is no "logical bridge" in this record to such an unlikely conclusion. The error is particularly egregious because the ALJ refused to hear additional testimony on the timing of Plaintiff's impairments at the hearing. Plaintiff repeatedly indicated that he could not fully remember the dates of various symptoms and treatments. *See, e.g.*, AR 56, 58, 60. Plaintiff's counsel asked that Plaintiff's wife be allowed to testify, because she knew the dates better. The ALJ refused to permit her testimony, stating that "I think we got enough information." AR 60-61. On remand, the ALJ must develop "a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *see also Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable.") (citations omitted).

Plaintiff also objects to the ALJ's analysis of his subjective complaints. The ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 404.1529(a); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). The ALJ is not permitted to

> make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' . . . The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms.

SSR 16-3p, 2017 WL 5180304 at *9.

To assess Plaintiff's allegations as a whole, the ALJ must "evaluate whether [those] statements are consistent with objective medical evidence and the other evidence" and "explain"

which symptoms were found to be consistent or inconsistent with the evidence. SSR 16-3p, 2016 SSR LEXIS 4, *15, 2016 WL 1119029 (Mar. 16, 2016), at *6, *8; *see also Zurawski*, 245 F.3d at 887 (remanding where the ALJ failed to "explain [] the inconsistencies" between a claimant's activities of daily living, his complaints of pain, and the medical evidence). "[T]he absence of objective medical corroboration for a complainant's subjective accounts of pain does not permit an ALJ to disregard those accounts." *Ghiselli v. Colvin*, 837 F.3d 771, 777 (7th Cir. 2016).

The ALJ found Plaintiff's complaints to be "not entirely consistent with the medical evidence and other evidence in the record," but her explanations for that conclusion were inadequate. For example, the ALJ discussed Plaintiff's testimony that on bad days he spends the entire day in bed, and that he has difficulties performing chores because he experiences dizziness and loses feeling in his hands. The ALJ found this testimony inconsistent with the record, based on his reports that he "took care of the dogs with some assistance," could cook "simple meals on good days," and had "just some physical limitations" in daily activities. In the portions of the record cited, Plaintiff stated that he lets the dogs outside, while his daughter feeds them (AR 228), but he only lets the dogs out "if he is feeling OK that day" (AR 247). On a good day, he would "try to make a simple breakfast" (AR 246) or a sandwich or frozen microwave meal (AR 248). He reported that he could cook "as long as someone else is around," and could "care for his personal needs and hygiene" despite his limitations, but could not vacuum, do dishes, or laundry (AR 707). The evidence cited did not contradict the testimony that Plaintiff has difficulty with chores because of dizziness and hand impairments, or that he spends "bad days" in bed, and therefore the ALJ failed to build a logical bridge to her conclusion that this testimony was inconsistent with the record. *O'Connor-Spinner*, 627 F.3d at 618. More generally, the ALJ's analysis of Plaintiff's function reports smacks of "cherry-picking" – ignoring or downplaying the majority of each

report while playing up the few lines in those same reports that weighed against disability. An ALJ "cannot rely only on the evidence that supports [her] opinion." *Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014) (quoting *Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013)); *see also Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014) ("[T]he ALJ identified pieces of evidence in the record that supported her conclusion that [the plaintiff] was not disabled, but she ignored related evidence that undermined her conclusion. This 'sound-bite' approach to record evaluation is an impermissible methodology for evaluating the evidence."). Moreover, to the extent the ALJ found that Plaintiff's impromptu daily activities were evidence of his ability to hold a job, she failed to acknowledge the difference between occasional activities in the home setting and the consistent performance that would be required for paid employment. *See Mendez v. Barnhart*, 439 F.3d 360, 362 (7th Cir. 2006) ("We have cautioned the Social Security Administration against placing undue weight on a claimant's household activities in assessing the claimant's ability to hold a job outside the home . . . The pressures, the nature of the work, flexibility in the use of time, and other aspects of the working environment . . . often differ dramatically between home and office or factory or other place of paid work.").

The ALJ also found that a lack of medical observation or treatment during the relevant period was evidence that Plaintiff's ailments were not as severe as he claimed. *See*, *e.g.*, AR 27 ("There is no mention of treatment" for blood sugar between October 2015 and December 2016). However, Plaintiff testified that he had "insurance gaps," including a gap of over one year, and at times could not afford treatment. AR 84-85. There were repeated references in the record to Plaintiff being unable to afford medication. *See, e.g.*, AR 488 ("cannot afford the rest of his medications"), 742, 745 ("unable to afford" Tricor, a cholesterol medication, and Humalog, a blood sugar medication). Although the ALJ cited one instance of Plaintiff being unable to afford

medication, she did not appear to consider that Plaintiff's financial difficulties may have contributed to the lack of medical records of his complaints. The ALJ needed to consider this possibility before making a negative inference about his lack of medical care. *Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("[W]hile infrequent treatment or failure to follow a treatment plan can support an adverse credibility finding, we have emphasized that "the ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir.2008)).

On remand, the ALJ is directed to consider all relevant evidence, including evidence generated after the date last insured that could help to show Plaintiff's condition before that date. *Parker*, 597 F.3d at 925. The ALJ must develop a full and fair record, soliciting additional information if needed. *Barnett*, 381 F.3d at 669. The ALJ is reminded that Plaintiff's subjective complaints must be considered in the manner required by SSR 16-3p, and that the ALJ must build a logical bridge from the evidence to the conclusions. *O'Connor-Spinner*, 627 F.3d at 618.

## IV.    Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the relief requested in Plaintiff's Opening Brief [DE 21] and **REMANDS** this matter for further proceedings. Based on the Court's review of the ALJ's decision and the hearing transcript, the Court **RECOMMENDS** that a new ALJ be chosen.

SO ORDERED this 6th day of March, 2020.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:   All counsel of record